# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 09 CR 0942 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| JOSE MANUEL HERNANDEZ-ROSAS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jose Hernandez-Rosas has pleaded guilty to Illegal Re-Entry of a Removed Alien. 8 U.S.C. § 1326(a) and (b)(2), and 6 U.S.C. § 202(4). His story is all too familiar. He was born in 1986 and entered the United States without inspection when he was approximately 7 years old. He was brought to the U.S. by his family and raised in the Northwest suburbs of Chicago. In 2000, when he was 14, he moved with his family to Sioux City, Iowa. Defendant's family is obviously of limited means. Both of defendant's parents work in a restaurant.

Defendant became involved with the streets, and, in 2005 in Iowa, he was convicted of aggravated assault. The incident leading to his arrest was gang related and involved some injury. Defendant claims he acted in self-defense, and, because of the imperfect self-defense issues, he was convicted of a misdemeanor and not a felony. Based on this conviction, for which he received a sentence of two years (and served approximately nine months), Hernandez-Rosas was deported in 2006 at age nineteen. At this time, he was completely culturally American.

Later in 2006, Hernandez-Rosas reentered the United States. Having been in jail, he says that he attempted to stay on the right side of the law and worked as a landscaper. He was not arrested until he and his girlfriend were victims of a shooting, and he gave the investigating

police a false birth year, leading to an obstruction of justice charge. He was sentenced to twelve months of conditional discharge but was also turned over to ICE, leading to the instant charge. Although defendant had reentered the United States years before the obstruction charge, the Guidelines treat his offense as being in the United States illegally after deportation, and give him points for committing the reentry offense while he was on supervision for the obstruction offense. *See* U.S.S.G. § 4A1.1(d) (adding two criminal history points because "the defendant committed the instant offense while under any criminal justice sentence . . .").

Defendant raises a number of arguments in favor of a sentence below the Guidelines. He argues that the lack of a fast track agreement in this district creates sentencing disparities. He argues that the Sentencing Commission failed in its institutional role when it created a sixteen offense level increase because of defendant's prior conviction.[1] He claims that his criminal history score, III, overstates his criminal history.[2] He argues that the fact that he was raised in the United States and knows no other country should factor into his sentencing.

The court finds to begin with that the Probation Office has correctly calculated the Guidelines. The Guidelines sentence for offense level twenty-one, criminal history category III

---

[1] Hernandez-Rosas' base offense level is eight. U.S.S.G. § 2L1.2(a). The Guidelines provide for a sixteen point increase in offense level because of his conviction in Iowa for aggravated assault. U.S.S.G. § 2L1.2(b)((1)(A(ii) and Application Note 1(B)(iii). Although the conviction is a misdemeanor under Iowa law, federal law treats the conviction as a felony because it carries a possible sentence of up to two years imprisonment. *See* U.S.S.G. § 2L1.2, Application Note 2. Hernandez-Rosas received a three point reduction for acceptance of responsibility, bringing his total offense level to twenty-one.

[2] Hernandez-Rosas received three criminal history points for the aggravated assault from 2005. He received one point for the obstruction of justice charge. And he received an additional two points because he was found to be in the United States illegally after he had been charged with obstruction of justice. With a total six points, Hernandez-Rosas is placed in criminal history category III.

is

46-57 months. The court finds, in addition, however, that the guidelines provide a not wholly adequate accounting of how defendant should be punished.

First, the court finds that the aggravated assault conviction, a misdemeanor under Iowa law concerning which defendant claims he acted in self defense, does not deserve to enhance his offense level by 16 points. The court agrees that the enhancement is probably disproportionate to any danger posed by defendant, especially given his law-abiding lifestyle since his illegal reentry.

Second, Hernandez-Rosas returned to the U.S. because he was culturally American, and his family lives in the U.S. In fact, the guidelines, themselves, suggest that a departure may be appropriate in a case such as this. Application Note 8 to Guideline § 2L1.2 provides for a possible departure where three conditions are met: (1) the defendant formed cultural ties to the U.S. from having resided there continuously from childhood, (2) the cultural ties provided the primary motivation for the illegal reentry, and (3) the departure is not likely to increase the risk to the public. The court finds that all of these conditions apply to this case. The only crime the defendant has committed since returning is that he lied to the police about his birth year–he likely did so because he sought to avoid deportation.

Finally, the fact that defendant is placed in criminal history category III probably overstates the severity of his actual history. The court finds that the additional two criminal history points defendant receives because he committed the instant offense while on supervision for the obstruction charge vastly overstates his criminal history in this case. First, the reality here, as in all such cases, is that the illegal reentry occurred *before* the obstruction charge arose.

Second, the fact that defendant got in this trouble when he was a victim of a crime, rather than a perpetrator, further makes the two points excessive. The defendant cites a number of cases pre-dating *Booker* where district courts departed from the guidelines because the two point enhancement makes little sense in a illegal reentry case like this. *See United States v. Galvan-Zermano*, 52 F. Supp. 2d 922, 924 (C.D. Ill. 1999) ("But being an alien is different from escape attempts or trying to smuggle contraband into the prison. The former is more akin to a pure status offense and is far less demonstrative of criminal culpability than the latter type of active criminal behavior."); *United States v. Contreras-Hernandez*, 277 F. Supp. 2d 952, 955 (E.D. Wis. 2003) ("[The defendant's] being 'found' while in jail was not the result of any conduct committed by him while in jail.").

The court also finds that giving the defendant three criminal history points for the original assault conviction is pushing the envelope, given that it was a misdemeanor and given the unresolved self-defense issues. Adding two points for this obstruction charge is even more excessive. Although the Probation Office has properly calculated defendant's criminal history category as III, the court finds that three points, and a level II, more appropriately assess his criminal history.

Having decided that a variance is warranted, the court must now determine what sentence is sufficient, but not greater than necessary, to carry out the purposes of sentencing. The court believes the sentence should be long enough to deter the defendant from returning to the U.S. yet again. In fast track districts around the country, the government regularly agrees to reduced sentences in illegal reentry cases in exchange for the defendant waiving certain rights. In some districts, the government will seek a departure of between 1 and 4 levels. In other districts, the

4

government employs charge bargaining to reach a sentence of 30 months. *See United States v. Medrano-Duran*, 386 F. Supp. 2d 943, 946-47 (N.D. Ill. 2005) (summarizing the fast track programs around the country). The court finds that Hernandez-Rosas is similarly situated to defendants in these other districts. The only difference is that the government has not established a fast track program in this district. The court believes that a sentence similar to one given in a fast track district would also be sufficient to deter the defendant in this case. Accordingly, the court will treat defendant as if he had an offense level of seventeen, four levels lower.

Treating defendant as if he were at offense level seventeen, criminal history category II, his guideline range would be 27-33 months.

That having been said, the court believes that a sentence of thirty months is appropriate to address the objectives of §3553. The very factors that mitigate defendant's crime, his ties to this community and lack of ties to Mexico, make the issue of deterrence significant in this case. A sentence of thirty months appropriately assesses defendant's past criminality, adjusts his criminal history score for the mitigating factors in his case, and still is a long enough sentence to serve the purposes of §3553.

Defendant is put on notice that the court could easily have sentenced him to the guideline range of 46-57 months. The court is quite certain that if he is again prosecuted for illegal reentry, he will be facing a sentence at least this long.

ENTER:

                                   /s/
                          JOAN B. GOTTSCHALL
                         United States District Judge

DATED: January 19, 2011